IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **BRODERICK TAYLOR,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.:  4:04CV1328TCM |
| v. | ) |
| | ) |
| **BRANNEKY & SONS MERCANTILE COMPANY,** | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, Broderick Taylor, by and through his undersigned attorney of record, Herman L. Jimerson, and hereby opposes the Defendant's Motion for Summary Judgment and in furtherance thereof states as follows:

### INTRODUCTION

The Defendant has moved this Court for Summary Judgment in the instant case alleging that the Plaintiff failed to establish a prima facie case because the evidence shows that the Plaintiff was not qualified to perform the essential functions of the job duties and because the Defendant alleges that there are no genuine issues of material facts.  However, the Plaintiff argues herein that there is sufficient evidence for a reasonable jury to find in the Plaintiff's favor, and that justice requires the review by a jury to determine the genuine issues of fact that continue to exist in the instant case.

### BACKGROUND

The Plaintiff worked for the Defendant for close to 20 years.  (Exh. 1, Plaintiff's dep. p. 21).  Plaintiff started as a salesman at the Defendant's hardware store in the early 1980's, but worked in several different positions up through the date that Plaintiff was terminated, November

21, 2001.  (Exh. 1, Plaintiff's dep. p. 49, 58).  In 1995 Plaintiff was diagnosed with retinitis pigmentosa, which results in decreased vision over time and eventually total blindness.  (Exh. 1, Plaintiff's dep. p. 61-63).  The Plaintiff told the Defendant employer of his diagnosis at that time.  Plaintiff's vision became worse and problems started occurring on the job.  (Exh. 1, Plaintiff's dep. p. 67-69).

Although Plaintiff was responsible for numerous different tasks with the Defendant in 2001 (Exh 1, Plaintiff's dep. pp. 21-39, 49, 50, 57-58, 102, and 106), all of those tasks cannot be said to be <u>essential</u> to the Defendant's position.  The Plaintiff's primary job duties were customer service and sales, advising the customers of products, locating the merchandise, ordering and stocking supplies, closing the store up at night, etc.  (<u>Id.</u>) Many if not all of these functions were taken into consideration by Job Accommodations, Inc. and were tasks for which Job Accommodations, Inc. suggested accommodations for Plaintiff's success and continued employment with Defendant employer.  (Exh. 2: Rehabilitation Engineering Report).  Nonetheless, Defendant terminated Plaintiff because the Plaintiff was blind (Exh 3: audio tape transcript) and an insurance "liability," (Exh. 1, p. 79-81) before reasonably accommodating the Plaintiff to continue to work with the Defendant as required under Americans with Disabilities Act and Equal Employment legislation.  Plaintiff was not even using the accommodations of a task light (flash light) at work yet.  (Exh. 1, p. 98, Exh. 2, p. 4-5) Plaintiff had not even begun using a walking stick at work before he was terminated.  (<u>Id.</u>) When Plaintiff folded the corner of his paper timecard down so as to find it, Defendant's agent(s) purposefully sabotaged this technique, refusing to accommodate the Plaintiff and teased and reprimanded for Plaintiff having punched the wrong card at work.  (Exh 1, p. 170-171).  The Defendant's illegal actions were intentional and callous.

Defendant had been the sole bread winner for his family of five (5) and needed to support his family after his termination. (Exh. 1, p. 82-83) Yet, the only job that Plaintiff would be able to do without more extensive rehabilitation was the one job he knew so well, the one he had worked for Defendant for nearly 20 years. (Exh. 4, p. 1). Without that job, Plaintiff was totally disabled and unable to work. (Exh. 5 and 6). Those statements to Social Security were true and accurate. Plaintiff required only accommodations to work at Defendant's hardware store, but required complete rehabilitation to work anywhere else. (Exh 2, 5, and 6).

In its Motion for Summary Judgment, Defendant attempts to treat every duty that Plaintiff ever performed as "essential" duties for purposes of ADA. Defendant alleges that the Plaintiff was not "qualified" under the ADA with or without reasonable accommodation. The accommodations were not yet instituted before the Defendant terminated the Plaintiff because the Plaintiff "can't see." (Exh. 1, p. 101, Exh. 2 and 3) Those accommodations would have enabled him to read and discern price tags, product information, colors, and product numbers. (Exh. 1, p. 101) Accommodations were suggested and the Defendant failed and/or refused to implement them as required under ADA and EEOC legislation by terminating the Plaintiff before the accommodations could be made.

## STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Summary Judgment is proper if the moving party shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Handeen v. Lemaire, 112 F.3d 1339, at 1346 (8th Cir. 1997). The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. See Fed. R. Civ. P. 56 (e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, (1986); Celotex Corp. v.

3

Catrett, 477 U.S. 317, at 324 (1986).  The court must view the facts in the light most favorable to the party opposing the motion. See Adickes v. S.H. Kress & Co., 398 U.S. 144, at 157 (1970). Britton v. City of Poplar Bluff, 1:98CV133LMB, (2000).  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 248 (1986).  Hutchins v. A.G. Edwards & Sons, 978 F. Supp. 885, at 887 (E. Dist. Mo. 1997).

## DISCUSSION

**A.  Summary Judgment is Improper because Genuine Issues of Material Fact Exist.**

The Plaintiff can show that genuine issues of material facts exist for a jury to decide in the instant case.  Those genuine issues surround the question of what were the essential functions of the Plaintiff's job (Exh 1, Plaintiff's dep. pp. 21-39, 49, 50, 57-58, 102, and 106), whether the Plaintiff could have performed those functions with the accommodations recommended by Job Accommodations, Inc. and Rehabilitation Services for the Blind (Exh. 2), whether the Defendant's harassment and hostility toward the Plaintiff's disability gives rise to an inference of discriminatory discharge (Exh, 1, pp. 68-69, 80-81, 94-103, 170-171, Exh. 3).  After hearing the instant case, a reasonable jury could find in the Plaintiff's favor.

**B.  Summary Judgment is Improper because the Plaintiff has Established a Prima Facie Case.**

Upon examination of the facts, the Plaintiff has met the burden of every element necessary to establish a prima facie case at law for which a reasonable jury could find in the Plaintiff's favor Anderson and Celotex, *supra*, especially so when the evidence is viewed in the light most favorable to the Plaintiff.  Adickes and Britton, *supra*.  Therefore, Summary Judgment is improper in this case.

4

In order to establish a prima facie case of disability discrimination under ADA, one must show (1) the existence of a disability within the meaning of ADA, 42 U.S.C. §12101, et. seq.; (2) that one was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) adverse employment action(s) due to the disability.  42 U.S.C. §12102(2)(A-C), Greer v. Emerson Elec. Co., 185 F.3d 917, at 921 (1999).  Also under ADA, to 'discriminate,' includes the use of standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability and using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability.  Raytheon Co. v. Joel Hernandez, 540 U.S. 44, at 53, citing ADA, 42 U.S.C. §12112(b).

That the Plaintiff has and had an existing disability during his employment and at the time of his termination is undisputed.  Whether the Plaintiff was a qualified individual with a disability at the time of his termination is addressed below.  The adverse employment actions Defendant made against the Plaintiff include:  workplace hostility and harassment (Exh, 1, pp. 68-69, 80-81, 94-103, 170-171), attempts to place Plaintiff in the basement to work (which was the least preferable position) (Exh. 1, p. 95-96), and, of course, the termination of the Plaintiff (Exh. 3), which is addressed below.

      **i.**      **Plaintiff is a Qualified Individual with a Disability.**

The Defendant alleges that because the Plaintiff gave a sworn statement of total disability and inability to work to the Social Security Administration that the Plaintiff was not qualified and was unable to the essential functions of the position he held with the Defendant.  However, the Plaintiff could nonetheless perform all of the essential functions of his job with the Defendant with reasonable accommodation.  The Plaintiff knew the hardware store's layout and

5

his role there well enough to, with reasonable accommodation, retain his position and successfully complete his duties therein. (Exh. 2 and 4). However, after his termination, the Plaintiff required vocational rehabilitation beyond mere accommodation (Exh. 5), and before that rehabilitation was complete Plaintiff would be unable to work anywhere *other* than in the position he had held for nearly 20 years and knew so well. (Exh. 1, p. 58, Exh. 2 and 4).

Job Accommodations, Inc., Rehabilitation Services for the Blind believed that the Plaintiff would be able to function and retain his position with the Defendant employer with the reasonable accommodations that were suggested by the same (Exh. 2, 4, 5, 6). However, the Defendant did not want to give the Plaintiff the chance to be accommodated, which was obvious from the hostility Defendant's agents directed toward Plaintiff's disability (Exh 1, Plaintiff's dep. pp. 21-39, 49, 50, 57-58, 102, and 106), and wanted to screen the disabled Plaintiff from their work force because he is blind (Exh. 3). A reasonable jury could decide that, although the Plaintiff became unable to work after his termination, he could have continued to do the essential functions of his job with Defendant with the accommodations recommended by experts in the field (Exh. 2, 4, 5, and 6).

Defendant misstates the Plaintiff's position when it alleges that the Plaintiff does not dispute which were the <u>essential</u> functions of the job Plaintiff held with the Defendant. The Plaintiff does not dispute what his occasional versus daily responsibilities were, but does dispute what the <u>essential</u> functions of his position were. Not every task Plaintiff ever did over a period of nearly twenty (20) years was <u>essential</u> to Plaintiff's position at the time that Defendant terminated the Plaintiff, as alleged by the Defendant. Plaintiff could do the essential functions of his responsibilities with accommodations at the time he was terminated (Exh. 1, p. 58, Exh. 2), but was nonetheless terminated because Plaintiff is blind (Exh. 3).

6

Although the Defendant's allege that the accommodations would have only helped with the paint department duties, and not with the other essential duties of the Plaintiff's job, the accommodations would have helped with all of the essential duties of the Plaintiff's job (Exh. 2), which were nonetheless primarily in the paint department, where the Plaintiff worked the majority of the time (Exh. 1, p. 49). A CTV monitor would have helped the Plaintiff read at his desk in the paint department. (Exh. 1, p. 127-129). In addition, the Job Accommodations, Inc. personnel suggested the accommodation of replacing old equipment (Exh. 2, p. 5 ¶8) and for making reading within the service counter area easier for the Plaintiff. (Exh. 2, p. 4-5). A <u>portable</u> CTV monitor accommodation recommended would have helped the Plaintiff at the service counter and throughout the store. (Exh. 2, p. 5, ¶7). With the accommodations, Plaintiff could have worked for Defendant, but was unable to work elsewhere (Exh, 1, p. 58 and Exh. 2). Therefore, after the termination, Plaintiff became totally disabled until Plaintiff finished rehabilitation. (Exh. 4 p. 4, Exh. 5). Therefore, the Plaintiff was a qualified individual within the meaning of ADA because he could perform the essential functions of the job (42 U.S.C. 12102(2)(A-C)) and because his Social Security application statements can be adequately explained as consistent with Plaintiff's assertions that he was qualified at the time of termination to perform the essential functions of his job. <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 798 (1999). The Social Security Administration does not consider the possibility of reasonable accommodations (<u>Id.</u> at 803), which even include the assignment of qualified readers and interpreters for disabled employees (<u>Id.</u> citing 42 U.S.C.§1211(9)(B).) Averments on Social Security applications do not determine whether a plaintiff was "qualified," for purposes of ADA. <u>Hughes v. Reinsurance Group of Am.</u>, 957 F. Supp. 1097, at 1101 (8th Cir. 1996) (where the Court held that summary judgment was improper because genuine issues of material fact existed

as to whether the plaintiff was qualified for purposes of ADA.)  Pursuant to the Court's decision in <u>Moore v. Payless Shoe Source, Inc.</u>, 187 F.3d 845 (8th Cir . 1999), Plaintiff has provided an explanation that he was qualified (assuming reasonable accommodations) for the position he held with the Defendant for nearly twenty (20) years and knew so well, but not qualified to work at a new job without more substantial rehabilitation.  The Defendant's citation to <u>McClean v. Case Corporation, Inc.</u>, 314 F.Supp.2d 911 (D.N.D. 2004) is not only not a controlling case in the Eastern District of Missouri, it is also distinguished from the instant facts where specific accommodations were recommended for job retention.

     The Defendant argues that all of the duties Plaintiff has ever performed for the Defendant are "essential" duties for which reasonable accommodations cannot be made.  The Defendant stated in its Motion for Summary Judgment that Plaintiff "already admitted that they [the accommodations] would not…." enable the Plaintiff to perform all the essential functions. (Exh. 1, p. 129).  Yet, the only admission Plaintiff made was that he anticipated the CTV monitor, which was only one (1) accommodation of many, would help him primarily in the paint department.  (<u>Id.</u>)  Professionals evaluated the Defendant's workplace and determined that the Plaintiff's main functions could be accommodated with maintenance of store lighting, ordering a special scale, placing writing on a white background to enhance contrast, asking another employee for assistance, use of a task light (head-mounted flashlight), additional lamp(s), CCTV monitor, ordering a new paint mixer, high contrast tape, keeping aisles cleared, use of a walking stick/cane (Exh 2 and 7).  Moreover, the Plaintiff could use brail magnetic tape to label products on the shelves. (Exh. 9, p. 7).  Therefore, the Plaintiff could perform all of the essential functions of his position with these reasonable accommodations (Exh. 2, 4, 7, 8, 9 and 10), and was therefore a qualified individual.  42 U.S.C. §12112(b).

The Defendant argues that the Plaintiff cannot pick and choose which duties he should be permitted to do and which he should not have to do because of his disability. However, eliminating some of the most hazardous duties considering his disability when those duties are not "essential," but merely incidental to employment at the hardware store, is a "reasonable accommodation." (Exh. 2), Cleveland, citing 42 U.S.C.§1211(9)(B) (US Supreme Court finding that "job restructuring" is a reasonable accommodation.) So, if once per week the Plaintiff was expected to cut glass or keys at the service counter to fill in for someone else temporarily (Exh. 1, p. 95-96), that is not an "essential" duty for the Plaintiff's position, and an accommodation should have been provided as indicated by Job Accommodations, Inc. pertaining to asking someone else to assist as with the hunting license at the service counter (Exh. 2). The temporary duties at the service counter were not "essential," duties to the Plaintiff's position. (Exh. 1, 95-96). Plaintiff requested the accommodation that he not work at night at the service counter because of his disabling night blindness. The service counter was not the Plaintiff's primary or "essential," duties. (Exh. 1, Plaintiff's dep. p. 95-96.)

The Defendant attempted to rely upon Miller v. Illinois Dept. of Corrections, 107 F.3d 43 (7th Cir. 1997), which cited a precedent of other Seventh Circuit cases that are not controlling in this district. Moreover, the Miller case is distinguished from the instant matter because the Plaintiff herein was not rotating through duties based upon an established schedule, but merely because he volunteered for additional duties if needed. (Exh. 1, 95-96) Those extraneous tasks the Plaintiff assumed cannot be said to be "essential," to the position that Plaintiff held with Defendant, which was full-time paint manager and part-time or temporary night manager and service counter. Which tasks were "essential," and which were extraneous is a factual issue, which justice requires to be determined by the jury.

9

The genuine issue of material fact was whether or not, with the accommodations recommended by the Job Accommodations, Inc. and Rehabilitation Services for the Blind, the Plaintiff would have been able to do enough of the duties of his position(s) to enable a reasonable jury to find that he could perform the "essential" duties of his position at the time of the termination.  The answer is yes.  The Plaintiff could perform enough of the duties to perform the "essential," duties (Exh. 1, p. 58) with the reasonable accommodations suggested by experts in the field (Exh. 2) and the occasional use of a reader or interpreter (Cleveland, citing 42 U.S.C.§1211(9)(B)), and magnetic Braille tape, (Exh. 9, p. 7).

      **ii.**      **Plaintiff's Termination Gives Rise to an Inference of Discrimination.**

An inference of bad faith and of disability discrimination in termination arises from the harassment Defendant subjected the Plaintiff to on the basis of the Plaintiff's disability, the hostile environment that the Defendant created toward the Plaintiff's disability (Exh, 1, pp. 68-69, 80-81, 94-96, 103, 170-171).  Even the exact language verbally used during the termination is indicative of the Defendant's animosity toward the Plaintiff's blindness (Exh. 3).  Defendant's agent Jeffrey Branneky accompanied the Job Accommodations, Inc. professionals during their evaluation of the Defendant's workplace. (Exh. 2).  Therefore, Defendant knowingly terminated the Plaintiff without allowing and without awaiting the promised forthcoming accommodations.  Defendant's intentionally discriminated against the Plaintiff by stating "well, you can't see!" (Exh. 3) and "you're more of a liability!"  (Exh. 1, p. 79-81).  Defendant's snatched merchandise out of the Plaintiff's hands while saying to a customer Plaintiff was assisting, "He doesn't know what he's talking about; he's blind!"  (Exh. 1, p. 101-103).  The Defendant's had created a hostile environment in which the Plaintiff was subjected to harassment about the liability the

10

Plaintiff's disability presented to the Defendant's workers' compensation insurance. (Exh. 1, p. 79-81 and Exh. 3).

The Defendant asserts in its Motion for Summary Judgment that the Plaintiff failed to advise his employer of what accommodations were necessary and caused that interaction to break down. However, the Plaintiff accompanied the Defendant's agent and the Job Accommodations, Inc. professionals in their discussion and evaluation of the Defendant's workplace. (Exh. 2). The process toward accommodation was still occurring. (Exh. 1, 97-99 and 102, Exh. 2, 4-10). The Defendant is responsible for the break down of communication by and through its taunting and hostility toward the Plaintiff's disability. (Exh, 1, pp. 68-69, 79-81, 94-96, 103, 170-171).

The Defendant continuously blamed the Plaintiff's failing vision for the Defendant's workers' compensation liability. (Exh. 11, p. 17). The Defendant's founding partner refused to permit Plaintiff even the possibility of accommodations (Exh. 11, p. 61-62), and instead stubbornly clung to the opinion that Plaintiff's blindness was a "liability," that could not be overcome, insisting that Plaintiff is a "blind person." (Exh. 11, p. 70). However, Defendant's co-owner admitted the possibility that accommodations could help Plaintiff read at work. (Exh. 12, p. 26). Another co-owner responsible for personnel matters kept a ongoing record of Plaintiff's bumping into coworkers and trivialities, which indicate a weariness on the Defendant's part of Plaintiff's blindness (Exh. 13, p. 12). The entire company even made a scandal of Plaintiff's awkwardness without the use of a walking stick cane at a social function. (Exh. 13, p. 13). The Defendant's testimonials indicate a general contempt for the Plaintiff's inability to see and an opinion that blindness is undesirable, which led to Defendant's illegal efforts to screen this undesirable element from the workforce. Raytheon, at 53.

Moreover, the Defendant explicitly discriminated against the Plaintiff. When Plaintiff requested the accommodation to be relieved of his duty to temporarily help on nights and at the service counter (Exh. 1, p. 95-96), the Defendant increased the Plaintiff's part-time night hours to full-time nights. (Id.) That was intentional, blatant, and knowingly discriminatory. Both the Plaintiff and Rehabilitation Services for the Blind were openly communicating with the Defendant about the accommodations necessary. (Exh. 1, p. 97-99 and 102, Exh. 2). A genuine issue of material fact exists regarding which party caused the breakdown in the process toward the accommodation. That party was the Defendant. Yet, this question is best left for a jury to decide.

## CONCLUSION

The Defendant has not proved that it is entitled to Summary Judgment as a matter of law. The Plaintiff has shown that the Plaintiff is qualified for the Defendant's job regardless of statements on his Social Security application and that he could have performed essential functions with the reasonable accommodations that were suggested by experts in the field. Moreover, the Plaintiff has identified genuine issues of material facts regarding whether the Plaintiff was qualified, whether the Defendant's behavior gives rise to inference of unlawful discrimination, and the issue surrounding which of the Plaintiff's duties were "essential," and the extent to which accommodations would have been reasonable. The remaining issues are all of factual nature and are material to the outcome of this case. Justice requires that the Defendant's motion for summary judgment must be overruled and presented to a jury for final factual determination.

Respectfully Submitted,

JIMERSON LAW FIRM, P.C.


/s/ Herman L. Jimerson
Herman L. Jimerson, #10509
225 South Meramec, Ste. 508
Clayton, Missouri 63105
(314) 862-0069
(314) 862-4134 (facsimile)

Attorney for Plaintiff

CERTIFICATE OF MAILING

    The undersigned hereby certifies that a true and accurate copy of the foregoing document was sent by way of electronic filing with the Court's CM-ECF electronic filing system, and thereby via E-mail this 12th day of October, 2005 to:

Philip C. Graham
HELFREY, SIMON & JONES, P.C.
120 S. Central Ave., Ste. 1500
St. Louis, MO 63105

/s/ Herman L. Jimerson