UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| BRODERICK TAYLOR, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case number 4:04cv1328 TCM |
|  | ) |  |
| BRANNEKY & SONS | ) |  |
| MERCANTILE COMPANY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

This action is before the Court[1] on the motion of defendant, Branneky & Sons Mercantile Company ("Branneky"), requesting summary judgment on the claims of plaintiff, Broderick Taylor, that Branneky could have, but did not, make a reasonable accommodation to permit him to continue working with his disability, retinitisis pigmentosa, and terminated him instead, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213.

### Background

Branneky hired Taylor in 1984 and fired him on November 21, 2001. (Def.'s Stip.[2] ¶ 1; John Branneky Dep. at 21; Taylor Dep. at 58.) Six years earlier, Taylor was diagnosed with retinitisis pigmentosa. (Def.'s Stip. ¶ 2.) "Retinitisis pigmentosa is a bilateral, progressive, degenerative eye disease, which causes night blindness, loss of peripheral

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]"Stip." refers to a party's Statement of Uncontroverted Facts that are admitted by the opposing party.

vision, loss of ability to distinguish colors and eventually total blindness." (Id. ¶ 3.) There is no cure. (Id.) At the time of his diagnosis, Taylor was told he had "at least 10 years of good sight." (Taylor Dep. at 62.)

In 2000, Taylor's vision had degenerated to the point that he could not see the lines on a piece of paper or see his hand in front of his face. (Id. at 45, 66.) In September or October of that year, he tripped over a garden cart and cut his leg. (Id. at 71-72.) Soon thereafter, he had a conversation with John Branneky. (Id. at 79-80.) John Branneky asked Taylor how long he intended on working because he was costing Branneky money and was becoming a liability rather than an asset. (Id. at 80.) John Branneky suggested that Taylor look for another place to work. (Id.) He also informed Taylor that the only way he could continue working at Branneky was if he signed a paper releasing the company from liability for any injuries he incurred at work because of his eyesight. (Id. at 80-81.) Their discussion ended with John Branneky telling Taylor he needed an answer by the end of the week. (Id. at 81.) No answer was given, and the subject was not discussed again. (Id.)

Also in 2000, Taylor contacted Rehab Services for the Blind. (Id. at 66.) In February 2001, Rehab Services procured equipment for Taylor to help him do his job, specifically, a lighted magnifier, a walking stick, special sunglasses, and a device to help him write on the correct lines. (Id. at 97-98.) That same month, according to Taylor's deposition testimony, Tim Branneky called him into the office to discuss his eyesight and how he was doing. (Id. at 95-96.) Tim Branneky told Taylor that they were going to protect themselves and offered to lay him off so he could receive unemployment or assign him to fix screens in the basement. (Id.) Taylor declined the offer. (Id. at 96.)

A few months later, people with Job Accommodations, Inc., assessed Branneky's hardware store in the company of Taylor and Jeff Branneky. (Pl.'s Ex. 2.) Taylor's vision at the time was described as follows: "He has vision in both eyes. Most of his vision is located toward the center of his field. He has better vision in his left eye. He can read print with both eyes." (Id. at 1.) Taylor's current job duties included managing the paint department, mixing paint, keeping the shelves stocked, ordering merchandise, and occasionally working at the service counter. (Id.) The report outlined some difficulties Taylor was having in performing these duties due to his decreasing vision. (Id. at 1-2.) These difficulties included being unable to read the print on the pricing gun, the pricing book, and the gauge on a scale; having problems reading some order forms and a tape measure; and having problems navigating the aisles in the area where screens and glass are cut and the aisles in the storage area. (Id.) Suggested accommodations included improving the store lighting by, inter alia, replacing burned-out light bulbs and moving overhead lights to the center of aisles; replacing the mechanical scale with a digital scale; providing a task light for Taylor's use; using a machine to mix pain that would automatically match paint samples; keeping aisles clear; installing a monitor at the paint desk that would help Taylor read paper work; and placing high-contrast tape on the floor in the storage area. (Id. at 4-5.) It was also suggested that Taylor use a cane for navigating around and outside the store. (Id. at 5.)

On November 21, John Branneky called Taylor into his office. (Taylor Dep. at 130.) According to Taylor's uncontradicted deposition testimony, John Branneky told Taylor they did not feel that he was safe at the store and that he (Branneky) could not work with someone

who would not give him an answer to a question. (Id.) John Branneky testified at his deposition that Taylor could not perform the duties for which he was hired. (John Branneky Dep. at 22.) In his answer to interrogatories, Tim Branneky stated that, at the time he was fired, Taylor could not perform the essential functions of his positions at Branneky's, including the night manager position, service counter position, paint department and salesman position, and salesman only position. (Def. Ex. I at 2-4.) On the other hand, Taylor testified he could then perform all the duties and functions of a night manager and floor salesman. (Taylor Dep. at 58.)

When applying in January 2002 for disability insurance benefits ("DIB") from the Social Security Administration ("SSA"), Taylor listed November 21, 2001, as the date he became unable to work. (Def.'s Ex. D at 2.) On another form, Taylor explained that he had difficulty preparing meals because of the hazard fire and hot food presented. (Def.'s Ex. F at 2.) He could not read and needed assistance with anything that required instruction. (Id.) Financial matters had to be handled by his family members. (Id. at 3.) Taylor was awarded benefits retroactively to February 12, 2001. (Def.'s Ex. G.)

As of his May 2005 deposition, Taylor was legally blind. (Taylor Dep. at 43.)

### Discussion

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome

of the suit under the governing law." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted).

The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). "A plaintiff facing a summary judgment motion cannot 'get to the jury without any significant probative evidence tending to support the complaint[,]'" but must "make a sufficient showing on every essential element of its claim on which it bears the burden of proof." **Buettner v. Arch Coal Sales Co.**, 216 F.3d 707, 718 (8th Cir. 2000) (alteration added) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). And, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998). "Mere allegations not supported with specific facts are insufficient to establish a material issue of fact[.]" **Henthorn v. Capitol Communications, Inc.**, 359 F.3d 1021, 1026 (8th Cir. 2004) (alteration added). "Only admissible evidence may be used . . ., and affidavits must be based on personal knowledge." **Id.** (alteration added) (interim citations omitted). See also **Stanback v. Best Diversified Products, Inc.**, 180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion). All disputed facts are to be

resolved, however, and all inferences are to be drawn in favor of the non-moving party. See **Ghane v. West**, 148 F.3d 979, 981 (8th Cir. 1998); **Kopp v. Samaritan Health Sys., Inc.**, 13 F.3d 264, 269 (8th Cir. 1993).

Summary judgment should seldom be granted in cases alleging employment discrimination. See **Luciano v. Monfort, Inc.**, 259 F.3d 906, 908 (8th Cir. 2001); **Bradley v. Widnall**, 232 F.3d 626, 630-31 (8th Cir. 2000); **Keathley v. Ameritech Corp.**, 187 F.3d 915, 919 (8th Cir. 1999). This is so "[b]ecause employment discrimination cases frequently turn on inferences rather than direct evidence," **Bell v. Conopco, Inc.**, 186 F.3d 1099, 1011 (8th Cir. 1999) (alteration added), and are inherently fact based, **Keathley**, 187 F.3d at 919. Summary judgment is appropriate in employment discrimination cases, however, "where there are no disputed facts and only one conclusion is possible." **Woods v. Perry**, 375 F.3d 671, 674 (8th Cir. 2004). See also **Pope v. ESA Servs., Inc.**, 406 F.3d 1001, 1006 (8th Cir. 2005) ("[T]his Court also has noted that there is no discrimination exception to the application of Fed.R.Civ.P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." (alteration added; interim quotations omitted)).

"The ADA prohibits discrimination against a 'qualified individual with a disability because of the disability . . . in regard to hiring, advancement or discharge.'" **Genthe v. Quebecor World Lincoln**, 383 F.3d 713, 716 (8th Cir. 2004) (quoting 42 U.S.C. § 12112(a)) (alteration in original). "A 'qualified individual' is a person who 'with or without reasonable accommodation can perform the essential functions' of the position he or she seeks." **Id.** (quoting 29 U.S.C. § 12111(8)). "A disability is 'a physical or mental impairment that

substantially limits one or more of the major life activities of such individual . . .'" **Id.** (quoting 29 U.S.C. § 12102(2)) (alteration in original). Seeing is a major life activity. 29 C.F.R. § 1630.2(i).

Branneky does not dispute that Taylor was, in November 2001, disabled within the meaning of the ADA. Rather, Branneky contends that Taylor's claim that he could have remained employed had Branneky made reasonable accommodations is foreclosed by his sworn statement when applying for DIB that he was disabled and unable to work.

The Supreme Court addressed a similar seeming inconsistency in **Cleveland v. Policy Mgmt. Sys. Corp.**, 526 U.S. 795 (1999). Noting that the inconsistency between swearing that one was disabled and claiming that one could continue working with reasonable accommodations was not about "purely factual matters," the Court held that the two claims did "not inherently conflict to the point where courts should apply a special negative presumption" that the pursuit and receipt of DIB benefits would ordinarily prevent a plaintiff from successfully asserting an ADA claim. **Id.** at 802. The Court continued that the sworn assertion of a DIB claimant that he was "unable to work" did appear, however, to negate an essential element of an ADA case. **Id.** at 806. Consequently, an ADA plaintiff had to proffer a sufficient explanation for the apparent inconsistency. **Id.**

The plaintiff in **Cleveland** explained in her brief before the Supreme Court the inconsistency between her DIB statements and her ADA claim: the former "'were made in a forum which does not consider the effect that reasonable workplace accommodations would have on the ability to work.'" **Id.** at 807 (quoting the plaintiff's brief). The Court held that this explanation was sufficient and that the parties should present or contest the

explanation at trial. **Id.** See also **Voeltz v. Arctic Cat, Inc.**, 406 F.3d 1047, 1050-51 (8th Cir. 2005) (finding submission of ADA case to jury appropriate when plaintiff testified that he thought he could work with accommodation; jury could have concluded both that plaintiff had good-faith belief in his DIB statement that he was unable to work and that he could perform work with reasonable accommodation). Similarly, in the instant case, Taylor argues that, although unable to work elsewhere, he could have performed the essential functions of his job with Branneky with reasonable accommodations. The sufficiency of this explanation is for the jury to resolve. Cf. **Gilmore v. AT & T**, 319 F.3d 1042, 1047 (8th Cir. 2003) (affirming grant of summary judgment in case in which ADA plaintiff neither claimed that her statements in support of disability benefits that she could not perform essential functions of job *even with reasonable accommodation* were inaccurate nor offered any explanation to reconcile statements with ADA claim); **Lane v. BFI Waste Sys.**, 257 F.3d 766, 769-70 (8th Cir. 2001) (affirming grant of summary judgment in case in which only explanation offered by ADA plaintiff of why he had sworn on DIB application that he was unable to work at any job was that he filed for the benefits because it was required by his insurance company).

As noted above, in order to prevail on his ADA claim, Taylor must show that he was a qualified individual. He testified in his deposition that he was able, when fired, to perform the functions of the night manager and floor salesman positions. "An ADA plaintiff may not rely on past performance to establish that he is a qualified individual without accommodation when there is undisputed evidence of diminished or deteriorated abilities." **Land v. Washington County, Minn.**, 243 F.3d 1093, 1096 (8th Cir. 2001). It is undisputed that Taylor's ability to see was deteriorating. It is also undisputed that this deterioration was

affecting his job performance. The question is whether his deteriorating vision could be reasonably accommodated.

The failure to make a reasonable accommodation is prohibited by the ADA. **Burchett v. Target Corp.**, 340 F.3d 510, 517 (8th Cir. 2003); **Kells v. Sinclair Buick-GMC Truck, Inc.**, 210 F.3d 827, 833 (8th Cir. 2000); 42 U.S.C. § 12112(b)(5)(B)). "An accommodation is simply some change or modification in the work environment which allows an individual with a disability to participate on an equal footing with non-disabled employees." **Kells**, 210 F.3d at 833 (citing 29 C.F.R. § 1630.2(o)(l)(iii)). "Reasonable accommodations might include special training, restructured work schedules, or modifications of workplace equipment and devices." **Id.** (citing 42 U.S.C. § 12111(9)(B)). "If the employee makes a showing that reasonable accommodation is possible, the burden of production shifts to the employer to show that it had a legitimate nondiscriminatory reason not to provide the accommodation." **Burchett**, 340 F.3d at 517. "Proposed accommodations which would involve significant expense or difficulties upon the employer's operation of its business constitute an 'undue hardship' and need not be implemented." **Kells**, 210 F.3d at 833 (citing 42 U.S.C. §§ 12112(b)(5)(A), 12111(10)).

In September 2001, the report of Job Accommodations, Inc., was sent by facsimile from the company to Susan Fuller, a vocational counselor with the Missouri Department of Social Services. (Pl. Ex. 2.) Neither party has submitted any evidence of its receipt or lack thereof by Branneky. There is evidence, however, that Jeff Branneky was present when Job Accommodations was assessing the store with a view of how to accommodate Taylor's deteriorating vision.

"If the employee needs an accommodation, the employer must engage in an interactive process." **Kratzer v. Rockwell Collins, Inc.**, 398 F.3d 1040, 1045 (8th Cir. 2005). This process is not required unless the employee requests the accommodation and informs the employer of what accommodation is needed. **Id.** "'What matters . . . are not formalisms about the manner of the request, but whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and the desire for an accommodation.'" **Ballard v. Rubin**, 284 F.3d 957, 962 (8th Cir. 2002) (quoting Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 159 (3rd Cir. 1999)) (alteration in original). If the employee does sufficiently request an accommodation, the employer must assist the employee in good faith in seeking accommodations and the employee must have been able to be reasonably accommodated but for the lack of good faith. **Kratzer**, 398 F.3d at 1045. "The mere failure of an employer to engage in the interactive process does not give rise to *per se* liability, although for summary judgment purposes such failure is considered prima facie evidence that the employer may be acting in bad faith." **Ballard**, 284 F.3d at 960. Clearly, Branneky knew of Taylor's disability, knew of his desire for accommodation, and participated, to some extent, in an interactive process by meeting with Job Accommodations.[3] See **Stafne v. Unicare Homes**, 266 F.3d 771, 775 (8th Cir. 2001) (finding employer's participation in interactive process demonstrated by employer meeting with vocational

---

[3]There is a suggestion in the record that Taylor contributed to any breakdown in the interactive process by refusing to meet with John Branneky without a lawyer present. This suggestion is not supported by evidence sufficient to support a grant of summary judgment.

rehabilitation counselor to investigate ADA plaintiff's request for use of wheelchair to accommodate back injury). The report from Job Accommodations outlined the accommodations necessary to enable Taylor to continue working at Branneky.

The question is then whether the accommodations requested were reasonable.

Factors to be considered when determining whether an accommodation creates an undue hardship include:

> (i) The nature and net costs of the accommodation needed . . . taking into consideration the availability of tax credits and deductions, and/or outside funding;
>
> (ii) The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;
>
> (iii) The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;
>
> (iv) The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and
>
> (v) The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

29 C.F.R. §§ 1630.2(p)(2)(i) through (v) (alteration added).

There is no evidence of what the suggested accommodations would have cost Branneky or what its overall financial resources were in November 2001. Additionally, there is evidence that the State of Missouri purchased some items for Taylor to accommodate his disability, but no evidence of what other funding would have been available.

There is also a question of to what extent job restructuring was necessary to accommodate Taylor. Job restructuring is a possible accommodation under the ADA, however, an employer "'need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee.'" **Dropinski v. Douglas County, Neb.**, 298 F.3d 704, 709-10 (8th Cir. 2002) (quoting Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 950 (8th Cir. 1999)). Accord **Milton v. Scrivner, Inc.**, 53 F.3d 1118, 1124 (8th Cir. 1995). See also **Heaser v. Toro Co.**, 247 F.3d 826, 832 (8th Cir. 2001) (rejecting ADA plaintiff's claim that employer should have computerized its order system to accommodate her need to work from home and holding that the employer "was not required to make an overall change in its manner of conducting business to accommodate" plaintiff's claim). "An essential function may be established by evidence that includes:

> '(1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.'"

**Id.** at 831 (quoting Moritz v. Frontier Airlines, Inc., 147 F.3d 787 (8th Cir. 1998)).

Taylor testified he could perform the essential functions of two positions; John Branneky testified he could not. Branneky criticizes the conclusory nature of Taylor's testimony. John Branneky's testimony, however, suffers from the same defect. In support of this testimony, Branneky submits a list of the essential functions of four positions which they allege Taylor needed to be able to fill because of the low number of employees. This list was apparently compiled for purposes of answering the interrogatories and not for advertising or filling a vacant position. The list includes 43 essential functions, including

"[m]ust be able to see small items" and "[r]otate stock in basement, be able to check dates on cans." The list also appears to include most, if not all, the positions in the store. "[I]f an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate through, a disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its essential duties." **Miller v. Illinois Dep't of Corrections**, 107 F.3d 483, 485 (7th Cir. 1997) (alteration added) (citing Allison v. Dep't of Corrections, 94 F.3d 494, 498-99 (8th Cir. 1996)). Similarly, if an employer has a legitimate reason for specifying multiple positions that an employee is expected to rotate through, positions which can not be altered by the reallocation of marginal functions, then an employee will not be qualified unless he can perform these positions. See **Id.** There is a genuine issue, created by the contradictory evidence of Taylor and the Brannekys, whether Taylor could perform, with reasonable accommodation, the essential functions of positions which could not be reasonably reallocated. Moreover, although an employer's judgment of essential job functions is particularly given deference when staffing is problematic, see **Kammueller v. Loomis, Fargo & Co.**, 383 F.3d 779, 786 (8th Cir. 2004), Branneky must have at least fifteen employees "for each working day in each of 20 or more calendar weeks" to be considered an employer for purposes of the ADA, 29 C.F.R. § 1630.2(e)(1), and the record contains no explanation of why Taylor must be able to perform all 43 functions. Moreover, the employer's judgment of essential job functions, "although highly probative, is merely evidence and is not conclusive." **Id.** The consequences of not requiring Taylor to perform these 43 functions demonstrates whether they are essential. See **Id.**; **Dropinski**, 298

F.3d at 709. There is no evidence in the record of any consequences, nor is there a record of whether these functions could be performed by Taylor with a reasonable accommodation. Taylor has put forth evidence that he could perform, with some accommodations, functions of his job at Branneky.

"Although the plaintiff retains the ultimate burden of proving that he is a qualified individual, if the employer disputes that the employee can perform the essential functions of the job, then the burden shifts to the employer to 'put on some evidence of those essential functions.'" **Fenney v. Dakota, Minn. & Eastern RR Co.**, 327 F.3d 707, 712 (8th Cir. 2003) (quoting Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995)). As noted above, Branneky has failed to support any claim of undue hardship or a claim that even with reasonable accommodations Taylor could not perform the essential functions of the jobs it needed him to complete. See **Kells**, 210 F.3d at 834 ("Failing to provide an employee with reasonable accommodations can tend to prove that the employer also acted adversely against the employee because of the individual's disability.") (reversing grant of summary judgment on ADA claim brought by employee with muscular dystrophy who had repeatedly requested covered parking space, ramp, and use of motorized cart).

The Court notes that there is a suggestion in the record that Taylor was bumping into people and tripping over equipment because of his deteriorating vision. An individual may not be qualified to hold a desired position if his or her disability poses "a direct threat to the health or safety of other individuals in the workplace." 29 U.S.C. § 12113(b). A "[d]irect threat means a significant risk substantial harm to the health and safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R.

§ 1630.2(r) (alteration added). "The determination that an individual poses a 'direct threat' shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment . . ." Id. (alteration added). Again, there is a suggestion of harm, but no evidence of whether it was or could be substantial or could be eliminated or reduced by reasonable accommodation.

The Court additionally notes that the time for evaluating Taylor's abilities is the date he was discharged. See **Hatchett v. Philander Smith College**, 251 F.3d 670, 674 (8th Cir. 2001). Because his vision is deteriorating, however, the question of what a reasonable accommodation would be cannot be answered only with reference to that one time. What was reasonable then might not be two months, or two years, later.

## Conclusion

Based on the record before the Court, there remains a genuine issue of material fact as to (i) whether Taylor's explanation of his statements when applying for DIB can be reconciled with his ADA claim; (ii) whether reasonable accommodations were available for him to continue performing the essential functions of his job at Branneky; and (iii) the nature of those essential functions. Accordingly,

**IT IS HEREBY ORDERED** that the motion of Branneky & Sons Mercantile Company for summary judgment is **DENIED**. [Doc. 21]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of November, 2005.